UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEVIN A. MYERS, JR., | : | |
|     Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:18-CV-505 |
| v. | : | |
| | : | |
| SCOTT SEMPLE, et al., | : | JULY 23, 2018 |
|     Defendants. | : | |

**INITIAL REVIEW ORDER**

**I.    INTRODUCTION**

The plaintiff, Kevin A. Myers, Jr. ("Myers"), currently incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, has filed a complaint pro se under section 1983 of title 42 of the United States Code. See Complaint ("Compl.") (Doc. No. 1). Myers sought leave to proceed in forma pauperis. See Motion for Leave to Proceed in Forma Pauperis (Doc. No. 2). On May 18, 2018, the court granted Myers' Motion. See Order Granting Motion for Leave to Proceed in Forma Pauperis (Doc. No. 8).

The Complaint names eight defendants: Commissioner Scott Semple, Warden William Mulligan, District 1 Administrator Angel Quiros, Administrative Remedies Coordinator Jessica A. Bennett, Lieutenant Lizon, Lieutenant Richardson, Officer S. Ocasio and Warden Maldonado. Myers contends that the defendants violated his rights in connection with his Security Risk Group ("SRG") hearing.

Under section 1915A of title 28 of the United States Code, the court must review prisoner civil complaints and dismiss any portion of a complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A

1

(2016).  Although detailed allegations are not required, a complaint must include sufficient facts to afford a defendant fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  See Bell Atlantic v. Twombly, 550 U.S. 544, 555–56 (2007).  Conclusory allegations are not sufficient.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)); see also Tracy v. Freshwater, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants).  However, notwithstanding this liberal interpretation, a pro se complaint will not survive dismissal unless the factual allegations meet the plausibility standard.  See, e.g., Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 387 (2d Cir. 2015).

## II. FACTS

On May 12, 2016, Myers and his cellmate were escorted to the medical waiting area at Osborn Correctional Institution while their cell was searched.  See Compl. at ¶ 8.  After nearly three hours, his cellmate was permitted to return to the cell while Myers was escorted to the Restrictive Housing Unit.  He was placed on Administrative Detention Status pending investigation on a charge of SRG affiliation.  Id. at ¶ 9.  Myers was notified of the charge later that day.  Id. at ¶ 10.  On May 13, 2016, Myers received a disciplinary report.  Id. at ¶ 11.  Officer Ocasio issued the disciplinary report, and Lieutenant Lizon approved issuance of the report.  Id. at ¶ 25.  Myers declined to plead guilty and requested a hearing.  Id. at ¶ 12.

2

On May 17, 2016, Myers appeared at a disciplinary hearing. Lieutenant Richardson was the hearing officer. Id. at ¶ 13. After Myers gave his statement, he was returned to his cell. Id. at ¶¶ 14–15. Officer Grimaldi told Myers that Lieutenant Richardson needed more evidence before making a decision. Id. at ¶ 16 (quoting Officer Grimaldi as saying, "He needs more. Usually if more evidence doesn't show up, you're good. But he would like more/to have more."). On May 25, 2016, Myers went to a second hearing. He affirmed the statement he gave at the original hearing. Lieutenant Richardson then told Myers that he was being found guilty of SRG affiliation based on information from a credible and reliable source. Id. at ¶ 17. Myers was told that he could appeal the decision to District Administrator Quiros. Id. at ¶ 18.

Myers filed an appeal on May 26, 2016. Id. at ¶ 18. On June 8, 2016, Myers was notified that the appeal was rejected because it was filed incorrectly. The notice indicated that Myers could refile the appeal. Id. at ¶ 20. The following day, Myers refiled the appeal. Id. at ¶ 21. The refiled appeal was rejected as untimely submitted. Id. at ¶ 23 & Ex. I. Myers alleges that defendant Bennett failed to retrieve the refiled appeal from the Administrative Remedies box in a timely manner. Id. at ¶ 25.

## III. DISCUSSION

In his Complaint, Myers alleges that defendants Lizon and Ocasio issued the disciplinary report without sufficient evidentiary support, defendants Richardson and Quiros denied him due process in connection with the disciplinary finding, and defendant Bennett was negligent in retrieving his disciplinary appeal. See Compl. at ¶ 25. He also alleges that defendants Maldonado, Mulligan and Semple are liable under "municipality" for the actions of their subordinates. See id. In the section of the Complaint entitled "Legal Claims," Myers contends that defendants Ocasio, Lizon,

3

Richardson and Maldonado violated his right to due process for his guilty finding and placement in the SRG Program, see id. at ¶¶ 25, 28; that the conditions in the SRG Program violate the Eighth Amendment, see id. at ¶ 28; that defendant Quiros violated his right to due process and his First Amendment right to freedom of speech by failing to address and correct the disciplinary finding on appeal, see id. at ¶ 29; and that defendant Bennett was negligent in failing to timely retrieve the appeal, also violating his rights to due process and freedom of speech, see id. at ¶ 30.  The court considers below whether the Complaint states cognizable claims for denial of due process, unconstitutional conditions of confinement, violation of freedom of speech, negligence, municipal liability, and supervisory liability.

    A.    <u>Eleventh Amendment</u>

Myers seeks a declaration that the defendants violated his rights and an injunction prohibiting the defendants from any retaliatory acts in the future.  See id. at ¶¶ 32–33.  Myers also seeks compensatory and punitive damages.  See id. at ¶¶ 34–35.  It is not clear from the Complaint whether Myers asserts these claims against the defendants in their official or individual capacities.

To the extent that Myers seeks relief against the defendants in their official capacities, the Eleventh Amendment prohibits suit against a state as a defendant in federal court, absent consent of the state or abrogation by Congress.  See <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984).  This immunity extends not only to states themselves, but also to state agencies or state officers in their official capacity.  See id.  Neither exception to the Eleventh Amendment is applicable here, as there is no indication that the state has consented to the suit or that Congress has

abrogated the Eleventh Amendment.[1]  Ex parte Young provides that a third exception to the Eleventh Amendment exists when a party sues a state official to enjoin an unconstitutional action.  See Pennhurst, 465 U.S. at 102.  The Ex parte Young exception, however, does not apply to actions for monetary damages against state officials in their official capacities.  See Edelman v. Jordan, 415 U.S. 651, 677 (1974).  Therefore, to the extent that Myers seeks monetary relief from the defendants in their official capacities, such claims are dismissed.

Additionally, the Ex parte Young exception does not apply to declaratory relief against state officials in their official capacities when the relief relates only to past conduct and there is no ongoing violation of federal law.  See Green v. Mansour, 474 U.S. 64, 74 (1985) (holding that Eleventh Amendment bars retrospective declaratory relief against state officials); New York State Corr. Officers & Police Benev. Ass'n, Inc. v. New York, 911 F. Supp. 2d 111, 129 (N.D.N.Y. 2012) ("[D]eclaratory relief is not permitted under Ex parte Young when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective.").  As the request for declaratory relief here relates only to past actions, any request for declaratory relief against the defendants in their official capacities is dismissed.

Accordingly, the court considers Myers' claims for damages and for declaratory relief to be asserted against the defendants in their individual capacities only.

---

[1] Section 1983 does not abrogate the Eleventh Amendment against the defendants in their official capacities because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  See Will v. Mich. Dep't State Police, 491 U.S. 58, 64 (1989).

B. <u>Injunctive Relief</u>

Injunctive relief in cases filed by prisoners regarding prison conditions must be narrowly tailored. "The court shall not approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1). In this case, Myers identifies one instance where he contends that his constitutional rights violated. Nonetheless, the requested injunctive relief would prohibit any defendant from "any and all retaliatory actions" against Myers until he is released from incarceration. See Compl. at ¶ 33.

This request for injunctive relief is overbroad and does not satisfy the requirements of section 3626(a). First, this case does not include any claims for retaliation, and the injunction is not necessary to correct the one instance of alleged constitutional violations that is the subject of this case. Second, the Department of Correction website shows that Myers is serving a sentence of 14 years and 6 months, with a maximum release date of October 2025.[2] Thus, 7 years still remain to be served on his sentence. Furthermore, the alleged constitutional violations occurred while Myers was housed at Osborn Correctional Institution. See Compl. at ¶ 8. Myers is now housed at MacDougall-Walker Correctional Institution. At least four of the defendants—Lizon, Richardson, Ocasio, and Maldonado—are employed at Osborn, not at MacDougall-Walker. See id. at 1. Even if the relief were related to the constitutional violation at issue in this case, restricting the actions of the defendants, some of whom

---

[2] See Inmate Information, Connecticut State Department of Correction, www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=352067 (last visited June 25, 2018).

6

are not at the same correctional facility as Myers, for seven years is not the least intrusive means to correct the violation. The request for injunctive relief is dismissed.

C. Due Process Claim

Myers alleges that he was denied due process at the disciplinary hearing that resulted in his placement in the SRG Program. See Compl. at ¶ 25. Myers names defendants Richardson, Quiros, Maldonado, Lizon and Ocasio in connection with this claim. See id.

To assert a due process claim, Myers must allege that he had a protected liberty interest in remaining free from assignment to the SRG Program and, if he had such an interest, that the defendants deprived him of the interest without affording him due process of law. See Walker v. Fischer, 523 Fed. App'x 43, 44 (2d Cir. 2013) (citing Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001)). No liberty interest in avoiding more restrictive confinement, such as punitive or administrative segregation, arises under the Constitution itself. See Wilkinson v. Austin, 545 U.S. 209, 221–22 (2005). However, "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations." Id. at 222. To determine whether a liberty interest occurs, the court must consider whether the new placement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 223 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

The Second Circuit has held that "the duration of [segregated] confinement is a distinct factor bearing on atypicality and must be carefully considered." Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000). A very long period of segregation confinement—longer than 305 days—is sufficiently atypical to trigger due process protections. Palmer v. Richards, 364 F.3d 60, 65 (2d Cir. 2004). "Where the plaintiff

7

was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." Id. at 64–65 (quotation marks omitted).

Here, as a result of the hearing, Myers was sent to the SRG Program. See Compl. at ¶ 28. He was housed in the SRG Program at MacDougall-Walker beginning on June 8, 2016. See id. at ¶ 20. The Complaint is not clear as to how long he remained in the SRG Program, but appears to indicate that some of the restrictive conditions were in place for at least six months. See id. at ¶ 28. Thus, the court infers that he was in the SRG Program for at least 180 days, within the range for intermediate duration. See Palmer, 364 F.3d at 65. Additionally, Department of Correction Administrative Directive 6.14 describes the SRG Program as "a structured 5 phase program" that inmates must complete before being reintegrated into general population. See Administrative Directive Chapter 6, Security and Control, www.portal.ct.gov/DOC/AD/AD-Chapter-6 (last visited June 25, 2018). The Directive describes some of the restrictive conditions in the SRG Program, and Myers describes other restrictive conditions in his Complaint. See id. at 5–7; Compl. at ¶ 28. For purposes of this Order, the court considers placement in the SRG Program to constitute an atypical and significant hardship in relation to the ordinary incidents of prison life. See Andrews v. Semple, No. 3:17-CV-1233 (SRU), 2017 WL 5606740, at *3 (D. Conn. Nov. 21, 2017); Green v. City of New York Dep't of Corr., No. 06-Civ-4978 (LTS) (KNF), 2008 WL 2485402, at *5 (S.D.N.Y. June 19, 2008).

Regarding the procedures that must be afforded at the administrative segregation hearing, the requirements depend whether "the purpose of more restrictive

confinement is disciplinary or punitive." Allah v. Milling, 982 F. Supp. 2d 172, 183 (D. Conn. 2013). If the purpose is disciplinary, then the procedural requirements of Wolff v. McDonnell, 418 U.S. 539 (1974), apply; if administrative, the lesser standard of Hewitt v. Helms, 459 U.S. 460 (1983), applies. See Allah, 982 F. Supp. 2d at 183.

Myers alleges that he was issued a disciplinary report for the charge SRG affiliation. See Compl. at ¶¶ 11–12 & Ex. B. He also refers to the hearing as a "disciplinary hearing." See id. at ¶¶ 12–15. Therefore, the court infers that the purpose of the more restrictive conditions was disciplinary, and the more rigorous requirements of Wolff are required. Myers was thus entitled to advance written notice of the charges; the opportunity, within reason, to call witnesses and present documentary evidence; an impartial decision maker; and a written decision from the factfinder detailing the evidence relied upon and the rationale for any disciplinary action taken. Wolff, 418 U.S. at 563–71. The notice provided must be sufficient to "inform the inmate of what he is accused of doing so that he can prepare a defense to those charges." Taylor v. Rodriguez, 238 F.3d 188, 192–93 (2d Cir. 2001).

Myers alleges that he was told that defendant Richardson found the letter, the only evidence presented at the first hearing, insufficient to support the charge. See Compl. at ¶ 16. Myers was found guilty at the second hearing based on the letter and information from a "source deemed reliable and credible." Id., Ex. D. It appears to the court, from the Complaint and Exhibit D, that Myers was not provided with this information from the additional source. Absent knowledge of the content of the source's statement, which apparently contained evidence deemed sufficient to find Myers guilty of SRG affiliation, it would be difficult for Myers to prepare a defense to the charge.

9

Additionally, because the disciplinary hearing officer's decision does not indicate what information was obtained from the source, Myers was not provided a detailed written decision from the factfinder detailing the evidence relied upon. Accordingly, the due process claim will proceed at this time against defendants Richardson and Quiros.

Defendants Lizon and Ocasio issued the disciplinary report. See Compl. at ¶ 25. Thus, the claim against them is that they falsely accused Myers of SRG affiliation. See id. A false disciplinary report violates due process only where "procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him …." Mitchell v. Senkowski, 158 Fed. App'x 346, 348 (2d Cir. 2005) (citation omitted). As the court has concluded that Myers has stated a claim for denial of procedural due process, the claim against defendants Lizon and Ocasio will proceed as well. The claim against defendant Maldonado is considered below as a claim for supervisory liability.

### D. Freedom of Speech

Myers alleges that the disciplinary charge based on his letter violated his First Amendment right to free speech. See Compl. at ¶ 29. An inmate's First Amendment rights are not necessarily forfeited when he enters prison. They are, however, limited. See Pell v. Procunier, 417 U.S. 817, 822 (1974) (noting "the familiar proposition that lawful incarceration brings about the necessary withdrawal or limitation of many privileges as rights," and stating that "a corollary of this principle is that a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system" (citations and quotation marks omitted)). Similar claims have been described not as First Amendment claims but as claims directed to "that narrower subset of First

Amendment rights that is not surrendered when a convicted criminal is placed into custody." McGowan v. United States, 94 F. Supp. 3d 382, 388 (E.D.N.Y. 2015) (citing Pell, 417 U.S. at 822), aff'd, 825 F.3d 118 (2d Cir. 2016).

"Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system . . . ." Pell, 417 U.S. at 822. The regulation is "valid if it is reasonably related to legitimate penological interests." Turney v. Safley, 482 U.S. 78, 89 (1987). The reasonableness of the regulation requires the court to consider "whether the governmental objective underlying the regulations at issue is legitimate and neutral, and [whether] the regulations are rationally related to that objective," "whether there are alternative means of exercising the right that remain open to prison inmates," and "the impact that accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison." Shakur v. Selsky, 391 F.3d 106, 113 (2d Cir. 2004).

Here, Myers alleges that he was disciplined for writing a letter, which prison officials interpreted as evidence of his membership in a Security Risk Group. See Compl. at ¶ 29; id., Ex. B (pointing to parts in the letter connecting Myers to known members of an SRG and indicating that Myers was "handling his responsibilities," which Ocasio interpreted as implying that Myers was the "block lieutenant for the SRG"). Correctional officials have a legitimate penological reason to control SRG activity within correctional facilities. See, e.g., Michel v. Manna, 2017 WL 1381859, at *5 (N.D.N.Y. Jan. 17, 2017) (holding that regulation prohibiting designs related to gang affiliation to be cut into an inmates hair was reasonably related to a legitimate penological interest);

11

Alameen v. Coughlin, 892 F. Supp. 440, 451 (E.D.N.Y. 1995) (upholding regulation prohibiting the display of black beads, which were related to gang affiliation); see also Escalara v. Charwand, No. 9:04-CV-0983(FJS/DEP), 2008 WL 699273, at *6 (N.D.N.Y. Mar. 12, 2008) (noting that prison officials retain the "right to control inmate speech and other behavior through the imposition of measures reasonably calculated to preserve the safety and security of a prison facility, its employees and inmates, . . . even though such measures may impinge upon an inmate's ability to speak freely or to associate with others"). Prohibiting SRG affiliation and the writing of letters discussing one's SRG "responsibilities" is reasonably related to that legitimate penological interest. Notably, it does not appear that inmates are prohibited from writing letters, but merely from letters that express SRG affiliation.

Thus, Myers has not stated a claim that the issuance of the disciplinary charge and resulting guilty finding deprived him of his First Amendment right to free speech. Myers' First Amendment claim is dismissed pursuant to section 1915A(b)(1) of title 28 of the United States Code.

### E.  Eighth Amendment

Myers alleges defendants Ocasio, Lizon, Richardson, and Maldonado violated his Eighth Amendment right to be free from unconstitutional conditions of confinement by placing him in the SRG Program. See Compl. at ¶ 28. He details a number of the conditions of confinement that he faced while in the SRG Program. See id. However, he does not allege that these defendants were aware of the conditions in the SRG Program or were responsible for creating those conditions. It appears that he was placed in the SRG Program at MacDougall-Walker, see id. at ¶ 20, but that these four defendants worked at Osborn, see id. at 1. Thus, Myers fails to allege that any of these

defendants is responsible for his conditions of confinement, and the Eighth Amendment claim against them is dismissed.

If Myers intends to assert an Eighth Amendment claim regarding the conditions of confinement in the SRG Program, he may file an Amended Complaint identifying which defendants are responsible for those conditions and alleging facts sufficient to state a plausible claim for relief under the Eighth Amendment.[3]

F.    "Municipal" Liability/Supervisory Liability

Myers contends that defendants Maldonado, Mulligan, and Semple are liable under "municipality" for the actions of subordinates. See Compl. at ¶ 25. It is not clear to the court what Myers means by "municipality." To the extent that he seeks to state a claim for municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978), he has not identified any municipality as a defendant. Even if he had identified a municipal defendant, Maldonao, Mulligan, and Semple are state, not municipal, employees because they are employed by the Connecticut Department of Corrections. Thus, any allegations against them cannot serve as the basis for municipal liability. See Walker v. City of New York, 974 F.2d 293, 301 (2d Cir. 1992) (holding that, because the district attorney was state official, his conduct cannot trigger municipal liability).

---

[3] The court also notes that it appears from the Complaint that Myers has not exhausted his administrative remedies as to any Eighth Amendment claim. In the Complaint, Myers alleges that he exhausted administrative remedies and cites to particular paragraphs. See Compl. at ¶ 26 (citing id. at ¶¶ 19–24). However, those paragraphs concern only the claims pertaining to Myers' SRG designation and make no mention of an Eighth Amendment claim for unconstitutional conditions of confinement. See id. Nor do any of Myers' cited Exhibits raise such an Eighth Amendment claim. See Compl., Exs. E, F, G, H, I. Thus, if Myers intends to replead his Eighth Amendment claim, he is advised that he should first exhaust his administrative remedies or, if he has exhausted them, include such allegations in the Amended Complaint.

13

Rather, it appears to the court that, by "municipality," Myers actually attempts to hold Maldonado, Mulligan, and Semple liable for supervisory liability. As wardens and the Commissioner of Correction, Maldonado, Mulligan, and Semple are "supervisory officials." To state a claim for supervisory liability, Myers must plausibly allege that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

Shaw v. Prindle, 661 Fed. App'x 16, 18 (2d Cir. 2014) (quoting the five possible bases for supervisory liability laid out in Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)); see also Shakir v. Derby Police Dep't, 284 F. Supp. 3d 165, 181–82 (D. Conn. 2018) (following the bases laid out in Colon because, although acknowledging that the Supreme Court may have heightened pleading requirements for supervisory liability, the Second Circuit has not rejected the standard in Colon or set a different standard).

1. Defendant Semple

The Complaint contains only one sentence against defendant Semple: "Scott Semple, Commissioner of the Connecticut Department of Corrections is liable under municipality due to his acquiescence of the continued practices of his subordinate severe, negligent actions in his Department." Compl. at ¶ 25. Myers alleges no facts suggesting that defendant Semple was aware of, or responsible for, the guilty finding at the disciplinary hearing or Myers' transfer to the SRG Program. Nor does he allege that Semple was grossly negligent in the supervision of his subordinates. Thus, Myers fails

14

to state a cognizable supervisory liability claim against defendant Semple, and the claim against Semple is dismissed.

        2.      Defendant Mulligan

Myers alleges that defendant Mulligan is responsible for his current conditions on "special monitoring" because defendant Mulligan is the warden of the facility where Myers is confined.  See Compl. at ¶ 25.  Myers specifically alleges that defendant Mulligan is responsible for "the plaintiff's increased paranoia of staff members, leading to severe anxiety and mental distress in the plaintiff, lack of various job opportunities, school opportunities, and contact visiting with the plaintiff's family."  Id.  Myers does not allege that he informed defendant Mulligan of his complaints or that defendant Mulligan established the SRG Program.  Myers alleges only that the above allegations "take[ ] place under William Mulligan's watch, guidance, and acquiescence to the going-ons of his subordinates in his facility."  Id.  Thus, Myers appears to attribute liability to defendant Mulligan solely because of his position as warden.  Such allegations are insufficient to support a claim for supervisory liability.  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.").

Even if the court reads Myers' above statement liberally to allege that Mulligan "allowed the continuance of" a policy or custom under which unconstitutional practices occurred, see Shaw, 661 Fed. App'x at 18, Myers has still failed to state a claim against Mulligan because his allegations against Myers do not state a claim that his rights were violated.  Myers has not alleged any condition of confinement responsible for his increased paranoia.  Additionally, his allegations of "lack of various job opportunities, school opportunities, and contact visiting" do not state a claim for relief.  See Moody v.

Dagget, 429 U.S. 78, 88 n.9 (1976) (holding that prisoners have no right to rehabilitative programming for due process purposes); Frazier v. Coughlin, 81 F.3d 313, 318 (2d Cir. 1996) (holding that a prisoner in New York has no liberty interest in a particular job assignment); Green v. Santiago, No. 3:16-cv-1724(CSH), 2017 WL 2312355, at *6 (D. Conn. May 26, 2017) (holding that denial of contact visits does not rise to an Eighth Amendment violation and citing other cases in which limitations on visitation similarly failed to state a claim); Mallgren v. Burkholder, 52 F. Supp. 3d 490, 496 (E.D.N.Y. 2014) (holding that inmates have no Eighth Amendment right to educational activities). Because Myers has not stated a claim that his rights were violated, he cannot satisfy the requirements of supervisory liability against Mulligan.[4] Accordingly, the claim against Mulligan is dismissed.

        3.       Defendant Maldonado

Myers alleges that defendant Maldonado is liable because he knew "what his subordinates were doing and was updated on the proceedings" relating to the disciplinary hearing. Compl. at ¶ 25. Accordingly, Myers appears to attempt to allege, under the second category of supervisory liability set out in Colon, that Maldonado, "after being informed of the violation through a report or appeal, failed to remedy the wrong." See Shaw, 661 Fed. App'x at 18. In Grullon v. City of New Haven, 720 F.3d 133 (2d Cir. 2013), the Second Circuit held that an allegation that the plaintiff sent a letter "to the Warden at an appropriate address and by appropriate means" is sufficient at the initial stages of an action to support an inference that the warden received and

---

[4] Additionally, the court notes that it appears that Myers has not exhausted his remedies as to these claims. See supra note 3.

16

read the letter and, therefore, was aware of the incident. Id. at 141. In Grullon, the plaintiff provided a copy of the letter he properly submitted to the warden. Id. at 140.

The court above permitted Myers to proceed on the due process claim against defendants Lizon, Ocasio, Richardson, and Quiros. See supra at 7–10. The court must construe Myers' pro se Complaint liberally to raise the strongest argument that it suggests. See Sykes, 723 F.3d at 403. Although the allegations in the Complaint are neither detailed nor particularly strong, construed liberally, they can be read to allege that Maldonado was informed about the unconstitutional conduct of defendants Lizon, Ocasio, Richardson, and Quiros and failed to remedy the wrong. Thus, Myers may proceed on the claim for supervisory liability against Maldonado.

### G. Negligence

Finally, Myers alleges that defendant Bennett was negligent in failing to retrieve his disciplinary appeal on the day it was placed in the Administrative Remedies box. See Compl. at ¶ 30. The Complaint appears to allege that Bennett's negligence "le[ft] the plaintiff exposed to" the resulting violations of his rights. See id. Because the Eighth Amendment and First Amendment claims have been dismissed, the court focuses only on the resulting violation of Myers' due process rights. The Supreme Court has held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 328 (1986); see also D.S. v. City of Peekskill, 581 Fed. App'x 65, 66 (2d Cir. 2014). Thus, any federal claim against defendant Bennett in her personal capacity is dismissed pursuant to section 1915A(b)(1) of title 28 of the United States Code.

To the extent that the claim against Bennett is construed as a state law negligence claim, that claim is also barred. State employees are immune from suits for negligence under state law. See Conn. Gen. Stat. § 4-165 ("No state officer or employee shall be personally liable for damage or injury, not wanton or reckless or malicious, caused in the discharge of his duties or within the scope of his employment."). Myers has not alleged that Bennett was wanton, reckless, or malicious. Thus, to the extent that Myers asserts a negligence claim against Bennett in her personal capacity, such a claim is dismissed under section 4-165 of the Connecticut General Statutes. See Fletcher v. Conn. Dep't of Corr., No. 3:16-CV-00152 (MPS), 2016 WL 7115932, at *4 (D. Conn. Dec. 6, 2016); Schofield v. Magrey, No. 3:12-CV-544 (JBA), 2015 WL 521418, at *13 (D. Conn. Feb. 9, 2015).

## IV. CONCLUSION

(1) The claims against all of the defendants in their official capacities are **DISMISSED** pursuant to section 1915A(b). The First Amendment claim, the request for injunctive relief, and the claims against defendants Semple, Mulligan, and Bennett in their individual capacities are also **DISMISSED**. The Eighth Amendment conditions claim is **DISMISSED** without prejudice. Myers may refile his Eighth Amendment claim if he can identify a proper defendant and state facts alleging that he exhausted his administrative remedies on this claim prior to March 26, 2018.

The case will proceed on the procedural due process and false accusation claims for damages against defendants Richardson, Quiros, Lizon, Ocasio, and Maldonado in their individual capacities.

(2) **The Clerk shall** verify the current work addresses for defendants Richardson, Quiros, Lizon, Ocasio, and Maldonado with the Department of Correction

Office of Legal Affairs, mail a waiver of service of process request packets containing the Complaint and this Order to those defendants within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on him in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)     **The Clerk shall** send Myers a copy of this Order.

(4)     The defendants shall file their Response to the Complaint, either an Answer or Motion to Dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include any and all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this Order.  Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this Order.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If Myers changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Myers must give notice of a new address even if he is incarcerated. Myers should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Myers has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Myers should also notify the defendants or the attorney for the defendants of his new address.

(9) Myers shall utilize the Prisoner Efiling Program when filing documents with the court.

**SO ORDERED.**

Dated at New Haven, Connecticut this 23rd day of July, 2018.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge